[Cite as *State v. Gasser*, 2016-Ohio-7538.]

STATE OF OHIO          )          IN THE COURT OF APPEALS
                       )ss:       NINTH JUDICIAL DISTRICT
COUNTY OF MEDINA       )

| STATE OF OHIO | C.A. No. 15CA0046-M |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| SCOTT GASSER | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 14CR0376 |

DECISION AND JOURNAL ENTRY

Dated: October 31, 2016

MOORE, Judge.

{¶1}   Defendant-Appellant Scott M. Gasser appeals from the judgment of the Medina County Court of Common Pleas.  This Court affirms.

I.

{¶2}   Based upon Mr. Gasser's behavior during a traffic stop and following his arrest, Mr. Gasser was indicted in June 2014, on one count of tampering with evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree.  Mr. Gasser filed a motion to suppress asserting that the traffic stop was a pretext and challenging the scope and duration of the traffic stop.  The trial court denied the motion following a hearing.  The matter proceeded to a jury trial.  The jury found Mr. Gasser guilty, and the trial court sentenced him to 18 months in prison.  Mr. Gasser has appealed, raising four assignments of error for our review, which will be addressed out of sequence to facilitate our analysis.

II.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT COMMITTED REVERS[I]BLE ERROR WHEN IT OVERRULED [MR. GASSER'S] MOTION TO SUPPRESS.

{¶3}    Mr. Gasser argues in his fourth assignment of error that the trial court erred in denying his motion to suppress.  Specifically, he asserts that the canine sniff of the vehicle was outside the permissible scope of the stop.

> Appellate review of a motion to suppress presents a mixed question of law and fact.  When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.  Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.  Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Internal citations omitted.)  *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶4}    On appeal, Mr. Gasser appears to assert that the decision of *Rodriguez v. United States,* __ U.S. __, 135 S.Ct. 1609 (2015), stands for the proposition that a canine sniff of a vehicle is outside the permissible scope of a traffic stop initiated solely for a minor traffic violation.  He does not challenge the validity of the stop itself.

{¶5}    We read nothing in *Rodriguez* that supports Mr. Gasser's contention.  *See State v. Jackson,* 9th Dist. Lorain No. 14CA010555, 2015-Ohio-2473, ¶ 29 ("[W]e view *Rodriguez* not as a departure from precedent, but merely as an illustrative example of the type of [canine] sniff test that unjustifiably prolongs a traffic stop.").  Instead, *Rodriguez* reaffirmed the validity of the holding of *Illinois v. Caballes,* 543 U.S. 405 (2005).  *See Rodriguez* at 1612.  "In * * * *Caballes* * * * [the Supreme] Court held that a canine sniff conducted during a lawful traffic stop does not violate the Fourth Amendment's proscription of unreasonable seizures." *Rodriguez* at 1612; *see*

*also State v. Norvet,* 9th Dist. Medina No. 14CA0114-M, 2016-Ohio-3494, ¶ 7 (reaffirming that "reasonable suspicion of drug-related activity is not necessary for an officer to request that a drug dog be brought to the scene of a traffic stop and perform a sniff of a detained vehicle when the vehicle is being otherwise lawfully detained at the time[]"). "A seizure justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Rodriguez* at 1612, quoting *Caballes* at 407; *see also Norvet* at ¶ 6 ("[W]hen detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to issue a ticket or a warning. This measure includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates.") (Internal quotations and citations omitted.). "In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation." (Internal quotations and citations omitted.) *Norvet* at ¶ 6.

{¶6} At the suppression hearing, Deputy David King of the Medina County Sheriff's Office testified that he was in the patrol division and also a canine handler at the time of the stop. At the time, Deputy King and his canine partner were certified through the Summit County Sheriff's Office.

{¶7} Deputy King testified that on May 30, 2014, while he was on duty, he received information that Mr. Gasser was possibly in a green Ford Taurus going to Cleveland to buy heroin. Deputy King was also provided with the license plate number of the vehicle. Around 11:00 p.m., Deputy King was in his patrol car with his canine partner observing traffic on 1-71 southbound near the 211 mile marker when he noticed a green Taurus pass him. The vehicle

contained several occupants. Deputy King pulled out and followed the vehicle and noted that the plate number matched the plate number he was given. The vehicle exited onto the ramp for State Route 224 westbound, and as it was doing so, Deputy King observed the front and rear passenger tires go completely over the fog line. Deputy King testified that such was a violation of Ohio traffic laws. Deputy King continued to follow the vehicle a short distance until another officer could get behind Deputy King's vehicle given the number of occupants in the Taurus. Thereafter, Deputy King turned on his overhead lights and initiated a traffic stop.

{¶8} Deputy King approached the driver's side, told the driver that he had observed her drive over the fog line and requested her license and proof of insurance. She was only able to supply her license. Mr. Gasser was seated in the backseat behind the driver. Deputy King also asked the passengers for identification; all of the three passengers except for Mr. Gasser complied.

{¶9} Deputy King then gave the drivers' licenses to another deputy who had arrived on the scene and asked that deputy to run the information through the computers. Deputy King then retrieved his canine partner from his car and walked the dog around the vehicle. The dog alerted to the rear driver's side door, near where Mr. Gasser had been seated.

{¶10} Deputy King estimated that less than five minutes passed between the time he pulled the vehicle over and the time he began the canine sniff, which he estimated took approximately one minute. At that point, the other officer had not been able to complete the computer searches and a ticket or warning had not been issued. Deputy King testified that, based upon his training and experience, a traffic stop involving four occupants could not be completed in less than five minutes.

{¶11} Given the foregoing, and in light of Mr. Gasser's limited argument on appeal, we conclude that the trial court did not err in concluding that the canine sniff was permitted. At the time of the sniff, the purpose of the stop had not been effectuated, and, thus, the vehicle was still being lawfully detained for the traffic infraction. *See Rodriguez,* __ U.S. __, 135 S.Ct. at 1612; *see also Norvet,* 2016-Ohio-3494, ¶ 18. The canine sniff did not prolong the duration of the traffic stop. *See Rodriguez* at 1612; *Norvet* at ¶ 18.

{¶12} Mr. Gasser's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT FOUND MR. GASSER GUILTY OF TAMPERING WITH EVIDENCE BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT SUCH FINDINGS.

{¶13} Mr. Gasser argues in his first assignment of error that his conviction is based upon insufficient evidence. As Mr. Gasser has argued his assignments of error concerning sufficiency and weight together in his brief, it is somewhat difficult at times to discern which arguments he believes concern weight and which he believes concern sufficiency. *See* App.R. 16(A)(7); App.R. 12(A)(2).

{¶14} The issue of whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶15} R.C. 2921.12(A)(1) states that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following: (1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]" "[A] conviction for tampering with evidence pursuant to R.C. 2921.12(A)(1) requires proof that the defendant intended to impair the value or availability of evidence that related to an existing or likely official investigation or proceeding. Likelihood is measured at the time of the act of alleged tampering." *State v. Straley,* 139 Ohio St.3d 339, 2014-Ohio-2139, ¶ 19. "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." Former R.C. 2901.22(A). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." Former R.C. 2901.22(B). "[I]t is not necessary for the State to set forth direct evidence of a tampering with evidence offense. Circumstantial evidence may suffice." (Internal quotations and citations omitted.) *State v. Glunt,* 9th Dist. Medina No. 13CA0050-M, 2014-Ohio-3533, ¶ 8,

{¶16} At around 9:00 p.m. on May 30, 2014, Agent John Stayrook with the Medina County Drug Task Force received information from an informant that Mr. Gasser would be going to, and coming back from, Cleveland that day. The informant also provided the make and model of the car as well as the license plate number. Agent Stayrook supplied that information to other law enforcement agencies in the area.

{¶17} Colin Wojdacz, a longtime friend of Mr. Gasser, and at the time of trial, a recovering heroin addict, testified that on May 30, 2014, he, Mr. Gasser, and two other people went to Cleveland to buy heroin. Mr. Gasser conducted the transaction from the car. While Mr. Wojdacz could not remember how much they spent on heroin, he agreed that it sounded right that he told police that he put in his share of $60. Mr. Wojdacz acknowledged that $60 would not buy much heroin and $100 would probably buy about half of a gram. Mr. Wojdacz testified that the four of them snorted the heroin in the car but he was unsure whether any was left over.

{¶18} After receiving the information from Agent Stayrook, Deputy King went out with his canine partner to patrol southbound I-71 traffic from a median strip dividing the northbound and southbound lanes of travel. Deputy King indicated that his marked patrol car was not hidden from view or concealed. He testified that his canine partner was trained to detect the odor of marijuana, heroin, ecstasy, cocaine, and methamphetamine.

{¶19} At around 11:00 p.m., Deputy King observed a vehicle matching the description drive by. As it passed him, he pulled out and followed it. He discovered that the license plate matched the one that was relayed to him. As the vehicle was exiting the highway, he saw the front and rear passenger side tires cross the fog lines. He also observed a lot of movement from the rear passengers in the vehicle. He became concerned that the passengers could have been reaching for a weapon or trying to conceal something. Deputy King stated that, based on his training and experience, it appeared to him that the occupants knew he was behind them. Deputy King did not notice anyone in the vehicle discard anything out the window.

{¶20} Mr. Wojdacz testified that the occupants of the vehicle saw the police car sitting in the median strip and noticed when the car pulled behind them. Mr. Wojdacz testified that he

and Mr. Gasser were "kind of laughing" when they saw the police car pull behind them; Mr. Wojdacz then clarified that at least he was laughing.

{¶21} A little over a mile or so from the exit, Deputy King initiated a traffic stop. There were four people in the vehicle; the driver, a female, and three males. Mr. Gasser was seated in rear seat on the driver's side of the vehicle. Mr. Wojdacz was seated next to Mr. Gasser. Upon interacting with police, Mr. Gasser volunteered that he had just been picked up from work. He also told officers that he had been at work all day which he claimed was evidenced by the mulch all over his clothes. Deputy King testified that he did not observe any mulch on Mr. Gasser's clothes or shoes.

{¶22} While another deputy ran the occupants' information, Deputy King walked his canine partner around the vehicle. The dog alerted on the rear driver's side door, near where Mr. Gasser was seated. The occupants were asked to exit the vehicle and the passengers were patted down.[1] No contraband was found. Deputy King testified that narcotics are not always found in vehicle searches after a dog alerts. The drugs could be concealed on a person, hidden in a compartment in the vehicle, or the alert could have resulted from a drug, such as marijuana, being smoked in the car days before. The occupants of the vehicle were then transported to the Medina County Jail.

{¶23} Agent Michael Barnhardt with Medina County Drug Task Force assisted Agent Stayrook with interviewing the occupants of the vehicle. Prior to interviewing Mr. Gasser, the agents spoke with the other occupants. Agent Stayrook testified at trial that Mr. Wojdacz never told him that the occupants used the heroin in the car. Mr. Gasser stated that the agents did not have anything on him, they did not find anything on him, and he did not know why he was there.

---

[1] The driver was not patted down as no female officer was present on the scene.

Agent Barnhardt testified that Agent Stayrook told Mr. Gasser they had spoken with the other occupants and they indicated that Mr. Gasser "did go up to Cleveland to buy heroin and that [the heroin was] on his person[.]" To which Mr. Gasser responded, "that was bullsh*t and he had nothing on him." Mr. Gasser further indicated that the occupants would not have accused him of having narcotics with him.

{¶24} The agents then advised Mr. Gasser that he was possibly looking at a possession charge if he did have drugs on his person. Mr. Gasser indicated he did not have any. He then told the agents that when Deputy King was pulling him over, he threw "it" out the window. Mr. Wojdacz also testified that he told police that Mr. Gasser threw "it" out the window.

{¶25} The agents then advised Mr. Gasser that they were going to get a search warrant for an x-ray because they believed he still had drugs on his person. The interview was terminated and Agent Stayrook and Deputy King searched the area of the traffic stop for at least two hours and did not find any narcotics.

{¶26} A warrant was obtained and Mr. Gasser was transported to the local hospital. Deputy Scott Donato with the Medina County Sheriff's Office was dispatched to transport Mr. Gasser from the jail to the emergency room of the hospital for a court-ordered examination. Deputy Donato was the primary officer guarding Mr. Gasser while he was at the hospital. He was accompanied by Agent Stayrook. According to Deputy Donato, Mr. Gasser was "very vocal" about not having an examination and was very uncooperative with the medical staff. Mr. Gasser stated that he already "flushed it[,]" but would not specify what it was he flushed. Deputy Donato indicated that the jail cell where Mr. Gasser was held prior to being taken to the hospital did not have plumbing.

{¶27} Agent Stayrook confirmed that Mr. Gasser was very adamant about not having an x-ray and used "pretty strong language[.]" Agent Stayrook testified that Mr. Gasser was very uncooperative when the nurse was trying to take his blood pressure and that Mr. Gasser tried to bite a nurse when she was putting the thermometer in his mouth. The medical staff was ultimately unable to execute the search warrant and x-ray Mr. Gasser.

{¶28} Mr. Gasser was taken back to the jail and placed in a holding cell with a toilet and a sink. When Agent Stayrook arrived back at the jail, Mr. Gasser was screaming that he "flushed it three times[.]" Later, as the other three occupants were released from the jail, Agent Stayrook overheard Mr. Gasser yelling to them, screaming profanities, thanking them for snitching on him, and telling them that he would get even with them when he got out.

{¶29} Viewing the evidence in a light most favorable to the State, we conclude that sufficient evidence was presented from which a jury could reasonably conclude that Mr. Gasser tampered with evidence. Mr. Wojdacz testified that Mr. Gasser had bought heroin that evening and that the four of them had used it in the car. However, Mr. Wojdacz did not know whether any heroin remained after they snorted it. Notably, the drug dog alerted on the vehicle near where Mr. Gasser was seated providing additional evidence that drugs of some kind were in the car at some point in time. Mr. Gasser's later behavior at the hospital, which led to hospital staff not executing the search warrant, could allow a trier of fact to infer that some drugs remained on his person that he did not want the authorities to find.

{¶30} Certainly at the point in time that Mr. Gasser was taken to the jail the first time and informed that officers were seeking a search warrant of his person because they believed he still had drugs on his person, there was evidence from which a jury could reasonably conclude that Mr. Gasser knew an official investigation involving drugs was in progress. *See* R.C.

2921.12(A)(1); *Straley,* 139 Ohio St.3d 339, 2014-Ohio-2139, at ¶ 19. As noted above, when Mr. Gasser was taken to the hospital to undergo an x-ray to determine whether he was in fact secreting drugs on his person, he adamantly refused to have the x-ray and became very uncooperative, even resorting to attempting to bite the nursing staff. Such behavior provides evidence from which a trier of fact could reasonably infer both that Mr. Gasser's purpose was to conceal evidence and that there was evidence on his person to conceal. *See* R.C. 2921.12(A)(1). Finally, Mr. Gasser himself told police, after he was placed in a holding cell with a toilet and sink upon returning from the hospital without being x-rayed, that he "flushed it three times[.]" From that evidence a trier of fact could infer that Mr. Gasser did in fact remove evidence in order to impair the availability of that evidence for use in an official investigation. *See* R.C. 2921.12(A)(1). The fact that some of Mr. Gasser's other statements about his disposal of evidence were unlikely to be true or were contradicted by statements made by police does not mean that the State failed to present sufficient evidence to sustain a conviction for tampering with evidence; instead such would go to issues of credibility and weight. *See State v. Violett,* 9th Dist. Medina No. 11CA0106-M, 2012-Ohio-2685, ¶ 7. Viewing the evidence in a light most favorable to the prosecution, we conclude that there was sufficient evidence to sustain a guilty verdict for tampering with evidence.

{¶31} In light of Mr. Gasser's limited argument on appeal, his first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

MR. GASSER'S CONVICTION FOR RECEIVING STOLEN PROPERTY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶32}** Mr. Gasser argues in his second assignment of error that his conviction is against the weight of the evidence.[2]

**{¶33}** When a defendant asserts that his conviction is against the manifest weight of the evidence:

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

**{¶34}** Mr. Gasser points out that many of his statements concerning the disposal of evidence were unlikely to be true. He notes that even though there was evidence that he told police he threw drugs out the window before the traffic stop, no drugs were found along the roadside, nor did Deputy King observe him toss anything out of the window. Additionally, he points out that the first time he told police that he flushed the drugs he did not have access to plumbing facilities. Finally, he argues that his statement that he "flushed it three times[]" does not make any sense as he was in a holding cell "in the presence of law enforcement." We note that the jury could have nonetheless reasonably believed that Mr. Gasser disposed of evidence. For example, the jury could have concluded that, given Mr. Gasser had access to plumbing facilities in his second cell, he could have disposed of the drugs notwithstanding "the presence of law enforcement." We remain mindful that "[t]he jury was able to observe the witnesses' demeanor during [] testimony and use these observations to weigh the credibility and resolve the

---

[2] While his assignment of error mistakenly lists receiving stolen property as the crime at issue, the text of the argument focuses on the crime at issue, tampering with evidence.

conflicts in the testimony." *State v. Andrews,* 9th Dist. Summit No. 25114, 2010-Ohio-6126, ¶ 28. Moreover, as we have stated numerous times, the "[t]he trier of fact is free to believe all, part, or none of the testimony of each witness." (Internal quotations and citation omitted.) *State v. Parker,* 9th Dist. Lorain No. 15CA010750, 2016-Ohio-5663, ¶ 23. Thus, the jury was free to disbelieve Mr. Gasser's statements to police that it found incredible while at the same giving weight to those statements that it found credible. Aside from Mr. Gasser's statements, the jury was confronted with evidence of Mr. Gasser's behavior at the hospital, which, as discussed in the sufficiency analysis, could also provide some evidence in support of a tampering conviction. Having thoroughly reviewed the entire record, weighed the evidence, and considered credibility issues, we cannot say that the jury committed a manifest miscarriage of justice in finding Mr. Gasser guilty of tampering with evidence, nor is this the exceptional case requiring reversal. *See Otten* at 340.

**{¶35}** Mr. Gasser's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR BY ALLOWING THE STATE TO PRESENT IRRELEVANT AND PREJUDICIAL EVIDENCE DURING THE TRIAL.

**{¶36}** Mr. Gasser argues in his third assignment of error that the trial court erred and committed plain error in allowing the State to present irrelevant and prejudicial testimony at trial.

**{¶37}** "The trial court has broad discretion in the admission or exclusion of relevant evidence." *State v. Rafferty,* 9th Dist. Summit No. 26724, 2015-Ohio-1629, ¶ 104. "In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable." *Id.*, citing *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

{¶38} Evid.R. 402 limits the admission of evidence to relevant evidence. Evid.R. 401 defines "[r]elevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

{¶39} Evid.R. 403 provides:

(A) Exclusion mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

(B) Exclusion discretionary. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence.

{¶40} Specifically, Mr. Gasser challenges the admission of the testimony of Agent Stayrook about "methods of concealment, descriptions of heroin, and the amount able to be purchased with sixty dollars[.]" During this line of questioning, Mr. Gasser's trial counsel only objected to two questions:

[Prosecutor:] Okay have you had experience in any of those capacities you've described, in any of those positions you've had in drug investigations where you've encountered people that have secreted narcotics first I'm going to say in their pants?

[Agent Stayrook:] Yes.

[Prosecutor:] Is that common?

[Agent Stayrook:] Yes

[Defense counsel]: Objection.

[Trial court]: Overruled.

The second objection occurred later in the line of inquiry:

[Prosecutor:] Okay. * * * [I]f you can, show me with your hands how much would a gram of heroin be.

[Defense counsel:] Objection.

[Trial court:] Basis?

[Defense counsel:] This has no relevance. There's been no testimony to the amount of heroin that was purchased, that there was even an amount of heroin purchased so this is all just speculation.

[Trial court:] Overruled.

{¶41} The prosecution then asked Agent Stayrook how big a gram of heroin would be as compared to common objects. Agent Stayrook indicated that it would be a little smaller than a BB.

{¶42} With respect to these two questions, we cannot say that the trial court abused its discretion in admitting this testimony. This testimony occurred at the end of trial, after the jury had already heard about Mr. Gasser's behavior at the hospital and had heard that Mr. Gasser claimed to have flushed drugs while he was in a cell with a toilet and a sink. Mr. Wojdacz had also already testified and acknowledged that it seemed correct that he told the police that he put in his share of $60 to buy heroin, that $60 would not buy much heroin, and that $100 would probably buy half a gram. In addition, defense counsel had also elicited testimony from Mr. Wojdacz that one gram of heroin was probably the most he ever had used at once. Agent Stayrook's testimony would thus support the State's theory of the case that Mr. Gasser secreted heroin because the testimony tended to demonstrate that it was possible to do so and that doing so was within the realm of Agent Stayrook's experience. In other words, if there was evidence that Mr. Gasser possessed an amount of heroin that was so great such that it could not be physically hidden on his person, the State's theory of the case would not be supportable.

{¶43} To the extent Mr. Gasser asserts that even if the testimony was relevant, it was inadmissible because it was confusing and unfairly prejudicial, we see no merit in that contention. Mr. Gasser's argument appears to be that this testimony was the State's way of attempting to improperly establish the existence of, and amount of, heroin. However, Mr.

Wojdacz himself testified, without defense objection, about the existence of heroin and that $60 would not buy much heroin. Further, Mr. Gasser's behavior at the hospital could allow a trier of fact to reasonably infer that some heroin remained. Accordingly, in light of his limited argument, Mr. Gasser has not demonstrated that Agent Stayrook's testimony was confusing or unfairly prejudicial.

{¶44} Nonetheless, even if the testimony was inadmissible, we cannot say that the admission of the testimony affected Mr. Gasser's substantial rights. *See* Evid.R. 103(A)(1); Crim.R. 52(A) ("Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."); *State v. McKelton,* Slip Opinion No. 2016-Ohio-5735, ¶ 184. Given the entirety of the other admitted evidence, any error in admitting this testimony was harmless beyond a reasonable doubt. *See* Crim.R. 52(A); *McKelton* at ¶ 184.

{¶45} While Mr. Gasser maintains that he objected to the entire line of questioning, there is nothing in the record that supports that contention. Accordingly, the remainder of his argument will be reviewed for plain error. Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "[T]he accused bears the burden of proof to demonstrate plain error on the record * * * and must show an error, i.e., a deviation from a legal rule that constitutes an obvious defect in the trial proceedings[.]" *State v. Jackson*, 9th Dist. Summit No. 27479, 2015-Ohio-5096, ¶ 51, quoting *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 22. "However, even if the error is obvious, it must have affected substantial rights, and [w]e have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." *Jackson* at ¶ 51, quoting *Rogers* at ¶ 22. "The accused is therefore required to demonstrate a reasonable probability that the error resulted in prejudice * * *." *Jackson* at ¶ 51, quoting *Rogers* at ¶ 22.

{¶46} Agent Stayrook additionally testified, without objection, that he had handled investigations where suspects have secreted narcotics on their person and that $60 or $100 was not going to buy a whole lot of heroin. Moreover, Agent Stayrook provided a description of what heroin typically looks like.

{¶47} For reasons previously articulated above, we likewise cannot say that admission of the other challenged portions of Agent Stayrook's testimony amounted to plain error. Mr. Gasser has not demonstrated that the testimony was inadmissible, and thus has not demonstrated error, let alone plain, or obvious error. *See Jackson* at ¶ 51, quoting *Rogers* at ¶ 22. We also fail to see how admission of the foregoing testimony affected Mr. Gasser's substantial rights in light of the other testimony admitted at trial. *See* Crim.R. 52(B).

{¶48} Mr. Gasser's third assignment of error is overruled.

III.

{¶49} Mr. Gasser's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

CARR, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

JEREMY SAMUELS, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW A. KERN, Assistant Prosecuting Attorney, for Appellee.