[Cite as *State v. Hays*, 2021-Ohio-2393.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

TERENCE HAYS

    Appellant

C.A. No.     29506

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 14 12 3781(B)

DECISION AND JOURNAL ENTRY

Dated: July 14, 2021

HENSAL, Presiding Judge.

{¶1} This matter comes before this Court following our decision to reopen Terence Hays's appeal of the denial of his motion to suppress in the Summit County Court of Common Pleas. For the following reasons, this Court confirms its prior decision.

I.

{¶2} On December 17, 2014, Ohio State Highway Patrol Sergeant Stacey Arnold was training Troopers Rick Caraway and Eric Golias on what to watch for while observing traffic. As they sat in a marked sport-utility-vehicle cruiser in an open area of the median of Interstate 80, they noticed a car being driven by Mr. Hays. The car was in the center lane travelling five miles per hour under the speed limit, the driver appeared slumped, the passenger was looking down, and neither occupant looked over at the cruiser as they passed by. After passing the cruiser, the car braked to an even lower speed. Finding the behavior of the car unusual, Sergeant Arnold pulled

onto the interstate and began following Mr. Hays. After observing him drift into another lane, Sergeant Arnold initiated a traffic stop and Trooper Caraway exited the cruiser to conduct the stop.

{¶3} Instead of walking up to Mr. Hays's car, Trooper Caraway beckoned Mr. Hays to come back to him. Although the car had Nebraska license plates, Mr. Hays had a Colorado driver's license. Mr. Hays told Trooper Caraway that he and the passenger were on their way to Boston and were going to be staying with friends there. Trooper Caraway conveyed Mr. Hays's information to the troopers inside the vehicle for them to run a background check and went up to the car along the passenger's side to speak to the passenger. The passenger told him that they were heading to Boston on vacation and would be staying at a hotel, but she did not know which one. Trooper Caraway returned to the cruiser to convey the passenger's information then got back into the cruiser himself and requested that his K-9 partner Bono be brought to the scene. When Bono arrived, he alerted on Mr. Hays's car. A search of the car uncovered marijuana.

{¶4} The Grand Jury indicted Mr. Hays on one count of trafficking in marijuana and one count of possession of marijuana. Mr. Hays moved to suppress the evidence found during the search, arguing that the traffic stop was impermissibly delayed for the K-9 unit. Following a hearing, the trial court denied the motion. Mr. Hays subsequently pleaded no contest to the offenses. The trial court found Mr. Hays guilty and sentenced him to five years imprisonment. Mr. Hays appealed, but this Court affirmed because the appellate record was incomplete. *State v. Hays*, 9th Dist. Summit No. 29506, 2020-Ohio-2919, ¶ 14. Mr. Hays applied for reopening, which this Court granted. Under Appellate Rule 26(B)(7), if an application to reopen is granted, the case shall proceed as on an initial appeal. The parties, however, "shall address in their briefs the claim that representation by prior appellate counsel was deficient and that the applicant was prejudiced by that deficiency." *Id*. If this Court "finds that the performance of appellate counsel was deficient

and the applicant was prejudiced by that deficiency * * * [it] shall vacate its prior judgment * * *." App.R. 26(B)(9). "If [it] does not so find, [it] shall issue an order confirming its prior judgment." *Id*. Mr. Hays has supplemented the record and assigned two errors in his reopened appeal.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION IN LIMINE, MOTION TO SUPPRESS AND FAILED TO SUPPRESS EVIDENCE SEIZED AS A RESULT OF APPELLANT'S ARREST ON DECEMBER 17, 2014, ALL IN VIOLATION OF APPELLANT'S RIGHTS AS SECURED BY AMEND. IV, U.S. CONST. AND APPELLANT'S RIGHTS TO DUE PROCESS IN AMEND. V, U.S. CONST. AND HIS RIGHTS AS SECURED UNDER ART. I, SEC. 10 OF THE OHIO CONSTITUTION.

{¶5}     Mr. Hays argues that the trial court should have suppressed the evidence obtained during the search of his car because the troopers unconstitutionally prolonged the stop for the arrival of the K-9 unit. Specifically, he argues that the troopers waited 11 minutes after requesting the K-9 to request the driving and criminal history records of him and the passenger. He also argues that there was no other reasonable suspicion of criminal activity to justify the extension of the stop.

{¶6}     A motion to suppress presents a mixed question of law and fact:

When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Internal citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶7} "An investigative stop may last no longer than necessary to accomplish the initial goal of the stop." *State v. Rackow*, 9th Dist. Wayne No. 06CA0066, 2008-Ohio-507, ¶ 8. *Accord Rodriguez v. United States*, 575 U.S. 348, 354 (2015) ("Authority for the seizure * * * ends when tasks tied to the traffic infraction are—or reasonably should have been—completed."). "The officer may not continue the detention for reasons unrelated to the initial purpose of the stop, unless he discovers additional specific and articulable facts that give rise to a reasonable suspicion of criminal activity." *Id.* The measure of time for which an officer may delay a motorist stopped for a traffic violation is the period sufficient to issue a ticket or warning. *State v. Norvet*, 9th Dist. Medina No. 14CA0114-M, 2016-Ohio-3494, ¶ 6; *Rodriguez* at 354-355. This includes the time to run a check on the driver's license, determine whether the driver has any outstanding warrants, and confirm the vehicle's registration and driver's proof of insurance. *Norvet* at ¶ 6; *Rodriquez* at 355. "In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation." *Norvet* at ¶ 6.

{¶8} "If a traffic stop is justified, and does not last any longer than necessary to effectuate the original purpose of the stop, a law enforcement official may simultaneously conduct a K-9 sniff of the exterior of the vehicle without any additional reasonable, articulable suspicion of criminal activity." *State v. Reid*, 9th Dist. Lorain No. 12CA010265, 2013-Ohio-4274, ¶ 8. "A seizure justified only by a police-observed traffic violation," however, "'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." (Alterations sic.) *Rodriguez* at 350-51, quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). "[A] dog sniff is not fairly characterized as part of the officer's traffic mission." *Id.* at 356.

{¶9}     Trooper Caraway testified at the suppression hearing that the traffic stop began at 2:31 p.m. and that he finished talking to Mr. Hays at 2:33 p.m.  He gave Mr. Hays's information to the troopers inside the vehicle but was not sure when it was processed.  He then approached Mr. Hays's car to talk to the passenger and returned to the cruiser with her information at 2:35 p.m., again to relay it to the troopers inside.  At 2:36 p.m., he got back in the cruiser and requested his K-9, which arrived at 2:50 p.m.  He began the K-9 sniff at 2:53 p.m. and finished it at 2:54 p.m.

{¶10}   Trooper Caraway testified that the cruiser had a mobile terminal in it that can verify whether a driver's license is valid.  The system is unable to run a complete check for wants and warrants, however, on out-of-state licenses.  Nevertheless, it would be typical for a trooper to run an individual's information through the mobile system first before asking the dispatcher to run a complete check.  In this case, Mr. Hays had a Colorado driver's license, but he told Trooper Caraway that he also had a residence in Nebraska.  The passenger, meanwhile, had a New Jersey driver's license.  Trooper Caraway also explained that, although the dispatcher noted the request for Mr. Hays's and the passenger's criminal history checks at 2:46 p.m., that is merely the time that the dispatcher recorded that there had been a request and did not necessarily indicate when the request was made.  For example, he noted that, even though he requested the K-9 as soon as he got back to the cruiser after talking to the passenger, the dispatcher did not record the request until 2:39 p.m.

{¶11}   Sergeant Arnold testified that she began running Mr. Hays's information on the in-cruiser terminal while Trooper Caraway went back to talk to the passenger.  She also ran the passenger's information after receiving it.  She then contacted the dispatcher to run the information for both drivers, but she could not remember exactly when that happened.  She testified that the equipment in the vehicles is not the best and that it can take several minutes, even 10 minutes for

information to be retrieved through the mobile terminal. She testified, however, that she conducted everything during the stop as expeditiously as she could and that none of the troopers delayed any of their work to wait for the K-9 to arrive. According to Trooper Caraway and Sergeant Arnold, the dispatcher did not finish running Mr. Hays's and the passenger's information until the K-9 sniff was over.

{¶12} Upon review of the record, there is no indication that the troopers delayed the traffic stop to wait for the K-9. According to Sergeant Arnold, she processed Mr. Hays's and the passenger's information through the in-cruiser system upon receiving it from Trooper Caraway and then contacted the dispatcher for a more thorough check after it was finished. There is nothing in the record to contradict the troopers' testimony that they did not delay in contacting the dispatcher or that the dispatcher did not finish running those checks until after the K-9 unit arrived and the sniff of the car was completed. We, therefore, conclude that the trial court correctly determined that the traffic stop was not unlawfully prolonged. *Rodriguez*, 575 U.S. at 357. Consequently, we do not need to reach whether the troopers had reasonable suspicion of other criminal activity that authorized them to prolong the stop. The trial court correctly denied Mr. Hays's motion to suppress. Mr. Hays's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

APPELLANT'S COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL IN HIS DIRECT APPEAL BY FAILING TO ENSURE THAT THE RECORD ON APPEAL WAS COMPLETE THUS VIOLATING APPELLANT'S RIGHT TO ADEQUATE REPRESENTATION AND DUE PROCESS OF LAW, RESULTING IN APPELLANT'S APPEAL BEING CONSIDERED ON AN INCOMPLETE RECORD.

{¶13} In his second assignment of error, Mr. Hays argues that his original appellate counsel was ineffective. To prevail on a claim of ineffective assistance of counsel, Mr. Hays must establish (1) that his counsel's performance was deficient to the extent that "counsel was not

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. A court, however, "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). To establish prejudice, Mr. Hays must show that there existed a reasonable probability that, but for his counsel's errors, the outcome of the proceeding would have been different. *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, ¶ 138.

{¶14} Mr. Hays argues that he was prejudiced by his counsel's failure to ensure that the appellate record was complete because this Court presumed regularity and did not review his assignments of error on the merits. Considering our determination that the traffic stop was not extended to allow a K-9 to sniff Mr. Hays's vehicle and that the trial court correctly denied Mr. Hays's motion to suppress, we conclude that Mr. Hays has failed to establish that he was prejudiced by his prior counsel's representation. Mr. Hays's second assignment of error is overruled.

III.

{¶15} Mr. Hays's assignments of error are overruled. Accordingly, pursuant to Appellate Rule 26(B), we confirm our prior judgment in this case.

Judgment affirmed.

―――――

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JENNIFER HENSAL
FOR THE COURT

CARR, J.
TEODOSIO, J.
CONCUR.


APPEARANCES:

LAWRENCE J. WHITNEY, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.