[Cite as *State v. Norvet*, 2016-Ohio-3494.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 14CA0114-M |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JAMES NORVETT III | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 14 CR 0191 |

DECISION AND JOURNAL ENTRY

Dated: June 20, 2016

MOORE, Judge.

{¶1} Defendant-Appellant James Norvet III appeals from the judgment of the Medina County Court of Common Pleas. We affirm.

I.

{¶2} On January 13, 2014, in the early afternoon, Mr. Norvet was driving north on I-71 in Medina County when Ohio State Highway Patrol Trooper Jared Hasler initiated a traffic stop after he observed Mr. Norvet's vehicle following a vehicle too closely and committing a marked lanes violation. A back up unit arrived shortly thereafter, and a canine was walked around Mr. Norvet's vehicle. The dog alerted to the vehicle. A search of the vehicle revealed a loaded 9mm handgun in the locked glove compartment and ammunition in a backpack in the back seat. No drugs were found.

{¶3} Mr. Norvet was indicted on one count of improperly handling a firearm in a motor vehicle in violation of R.C. 2923.16(B), a felony of the fourth degree. A forfeiture specification

accompanied the charge. Mr. Norvet filed a motion to suppress which was denied following a hearing. Thereafter, Mr. Norvet pleaded no contest and was sentenced to two years of community control.

{¶4} Mr. Norvet has appealed, raising a single assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO SUPPRESS THE EVIDENCE BY NOT FINDING THAT THE TROOPER'S CONTINUED DETENTION OF [MR. NORVET] PAST THE ORIGINAL PURPOSE OF THE TRAFFIC STOP, WITHOUT ARTICULABLE FACTS TO DO SO, HAD CONSTITUTED AN ILLEGAL S[EI]ZURE[.]

{¶5} Mr. Norvet asserts in his sole assignment of error that the trial court erred in failing to grant the motion to suppress because he was being unlawfully detained at the point in time of the dog sniff of his vehicle. Mr. Norvet has not challenged on appeal any other aspect of the stop or search.

> Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Internal citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶6} "[W]hen detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to issue a ticket or a warning. This measure includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates." (Internal citations and quotations omitted.) *State v. Ross,* 9th Dist. Lorain No. 12CA010196, 2012-Ohio-6111, ¶ 8, quoting *State v. Davenport,* 9th Dist. Lorain No.

11CA010136, 2012-Ohio-4427, ¶ 6, quoting *State v. Batchili,* 113 Ohio St.3d 403, 2007-Ohio-2204, ¶ 12; *see also Rodriguez v. United States,* __ U.S. __, 135 S.Ct. 1609, 1612 (2015) ("A seizure justified only by a police-observed traffic violation, * * * become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission of issuing a [warning] ticket for the violation.") (Internal quotations and citation omitted.). "In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation." *Ross* at ¶ 8, quoting *Davenport* at ¶ 6, quoting *Batchili* at ¶ 12. "[I]f during the limited scope and duration of the initial stop an officer encounters additional specific and articulable facts that give rise to a reasonable suspicion of criminal activity beyond that which prompted the stop, the officer may continue to detain the defendant to investigate those new concerns." *Ross* at ¶ 8, quoting *State v. Shook,* 9th Dist. Lorain No. 93CA005716, 1994 WL 263194, *3 (June 15, 1994).

{¶7} This Court has held that reasonable suspicion of drug-related activity is not necessary for an officer to request that a drug dog be brought to the scene of a traffic stop and perform a sniff of a detained vehicle when the vehicle is being otherwise lawfully detained at the time. *See State v. Carlson,* 102 Ohio App.3d 585, 594 (9th Dist.1995). An alert by a trained drug dog to a lawfully detained vehicle provides officers with probable cause to search the vehicle. *State v. Reid,* 9th Dist. Lorain No. 12CA010265, 2013-Ohio-4274, ¶ 8, quoting *Carlson* at 600.

{¶8} Accordingly, under the circumstances of this case, in deciding whether Mr. Norvet was being lawfully detained at the time of the dog sniff we examine whether the dog sniff impermissibly prolonged his detention. *See Rodriguez* at 1616.

{¶9} Trooper Hasler testified that, on January 13, 2014, at 1:41 pm, he was in a marked cruiser sitting stationary at a crossover point on I-71. He observed a purple vehicle following a semi-truck too closely and decided to follow it. Upon getting behind the vehicle, he noticed it drift in its lane and travel over the right white fog line. Trooper Hasler then turned on his overhead emergency lights and began to initiate a traffic stop. As he was doing so, he observed the driver, later identified as Mr. Norvet, lean over towards the passenger floorboard or glove compartment area.

{¶10} Trooper Hasler indicated that the vehicle was slow to pull over and rolled for a few hundred feet in the berm before stopping. While the vehicle was in the berm, Trooper Hasler again observed Mr. Norvet reach over to the same area. When the vehicle came to a complete stop, Mr. Norvet again reached over towards the same area. Upon seeing Mr. Norvet engage in these "furtive" movements on more than one occasion, Trooper Hasler decided to call canine handler Trooper Dave Norman to assist him. Trooper Hasler indicated that his first thought upon approaching the vehicle was that there was a gun in the car.

{¶11} Trooper Hasler approached Mr. Norvet's vehicle from the passenger side and noticed that Mr. Norvet had turned the vehicle off, which Trooper Hasler found odd. Trooper Hasler requested Mr. Norvet's license, proof of insurance and registration, and informed Mr. Norvet of the reason for the stop. Mr. Norvet indicated he was driving from Columbus to Kent State University. When asked why he was bending over on multiple occasions, Mr. Norvet stated that he was getting his vehicle information. Mr. Norvet indicated there was nothing illegal in the vehicle.

{¶12} Trooper Hasler went back to his cruiser and began to run Mr. Norvet's information through the computer. Trooper Hasler learned that Mr. Norvet had a valid license.

At that point in time, Trooper Hasler only planned to write Mr. Norvet a warning. At 1:45 pm, Trooper Norman arrived on the scene, before Trooper Hasler had even started to write the warning. In fact, Trooper Hasler stated that at the time, he "was making the inquiry on [his] computer in reference to the driving record and the registration." Trooper Hasler exited the cruiser and explained the situation to Trooper Norman. Trooper Hasler escorted Mr. Norvet to the police cruiser and asked if there were any weapons inside Mr. Norvet's vehicle. Mr. Norvet indicated that there not. Mr. Norvet gave consent for a pat down and no weapons were found on his person. Trooper Hasler acknowledged that it was standard operating procedure to remove occupants from the vehicle prior to a canine sniff.

{¶13} Trooper Norman walked his canine around the vehicle and informed Trooper Hasler that the dog had alerted to the vehicle. At 1:48 pm, Mr. Norvet was advised of his *Miranda* rights and placed in the cruiser. Trooper Hasler again asked if there was anything in the vehicle that a search would reveal. At that point, Mr. Norvet advised him that there was a firearm in the locked glove compartment.

{¶14} The vehicle was searched and a loaded 9mm handgun was found in the locked glove box, which the troopers unlocked with a key found in the center console. Trooper Hasler again spoke with Mr. Norvet and asked if anyone was smoking marijuana in the vehicle. Mr. Norvet responded that someone may have done so a couple days before the stop. Additional ammunition was found in a backpack in the backseat, but no drugs were found.

{¶15} Trooper Hasler acknowledged that there was a video of the stop but it was erased after he mistakenly concluded that Mr. Norvet was not indicted in the matter.

{¶16} Mr. Norvet testified at the hearing as well. He indicated that, at the time of the stop, he was traveling from his home in Columbus to Kent State University to go back to school.

Mr. Norvet denied that he was read his *Miranda* rights and denied that he told Trooper Hasler that there was a gun in the glove box; he believed that because it was locked away, he did not have to inform the trooper of its presence. Additionally, Mr. Norvet asserted that he was standing outside the police cruiser as the drug dog was walked around the vehicle and he never saw the dog alert to the vehicle.

{¶17} We begin by noting that we are concerned by some of the trial court's factual findings. For instance, the trial court repeatedly refers to the trooper issuing a citation, but the record is clear that the trooper only planned to issue Mr. Norvet a written warning. Additionally, the record does not support the finding that Mr. Norvet was placed in the trooper's vehicle as the "citations" were being prepared. The transcript indicates that Trooper Hasler had not even begun to write the warning by the time Trooper Norman arrived, and that at the point in time that the canine was walked around the vehicle, Mr. Norvet was standing with Trooper Hasler outside of the police cruiser. Mr. Norvet's own testimony confirms this point. Nonetheless, because these facts do not relate to the duration of Mr. Norvet's detention, we point them out only for the sake of clarity. They do not have direct bearing on the issue raised on appeal.

{¶18} After reviewing the record, we cannot say the trial court erred in concluding that Mr. Norvet was not unlawfully detained at the time of the dog sniff. Less than 10 minutes had passed from the traffic stop to the point that Mr. Norvet was read his *Miranda* rights, at which point the drug dog has already alerted. There was no evidence that Trooper Hasler was not acting with diligence in conducting the traffic stop. Moreover, at the time Trooper Norman arrived with the drug dog at 1:45 pm, Trooper Hasler had not even begun to write the warning. *See Ross,* 2012-Ohio-6111, at ¶ 8, quoting *Davenport,* 2012-Ohio-4427, at ¶ 6, quoting *Batchili,* 113 Ohio St.3d 403, 2007-Ohio-2204, at ¶ 12. Accordingly, the purpose of the stop had not yet

been effectuated. *See Carlson,* 102 Ohio App.3d at 598. Nothing in the record evidences that the drug dog sniff prolonged Mr. Norvet's detention. *See Rodriguez,* __ U.S. __, 135 S.Ct. at 1616.

{¶19} Mr. Norvet's sole assignment of error is overruled.

### III.

{¶20} Mr. Norvet's assignment of error is overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

CARR, P. J.
WHITMORE, J.
CONCUR.


<u>APPEARANCES:</u>

KRISTOPHER K. AUPPERLE, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW A. KERN, Assistant Prosecuting Attorney, for Appellee.