[Cite as *State v. Thomas*, 2020-Ohio-3539.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellant

    v.

CHELSEA RENEE THOMAS

    Appellee

C.A. No.     29497

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR-2019-01-0223

DECISION AND JOURNAL ENTRY

Dated: June 30, 2020

SCHAFER, Judge.

{¶1} Plaintiff-Appellant, the State of Ohio, appeals the decision granting Defendant-Appellee, Chelsea R. Thomas's, motion to suppress evidence in the Summit County Court of Common Pleas. For the reasons that follow, this Court affirms.

I.

{¶2} On January 31, 2019, the Summit County Grand Jury indicted Ms. Thomas on one count of aggravated possession of drugs in violation of R.C. 2925.22(A)/(C)(1)(a), a felony of the fifth degree. The charge stems from the November 23, 2018 traffic stop of Ms. Thomas's vehicle. Just prior to 2:30 p.m. that day, Detective Heim, a Stow Police Officer and member of the Summit County Drug Task Force, had been observing an apartment on Echo Valley Drive in Stow for activity related to the suspected sale of narcotics. After witnessing Ms. Thomas's vehicle stop at the apartment, Detective Heim followed the vehicle and radioed fellow Stow Police Officer Brian Haddix to request he pursue the vehicle as well. Officer Haddix initiated the traffic stop after

Detective Heim informed him that he observed Ms. Thomas's vehicle commit a marked lanes violation.

{¶3} Officer Haddix approached the vehicle and made contact with the driver, Ms. Thomas. After informing her of the reason for the stop, Officer Haddix engaged in conversation with Ms. Thomas, reviewed her insurance information, and took her driver's license. Officer Haddix observed that Ms. Thomas was nervous and informed her that he did not believe she was intoxicated and indicated that, if her information checked out, he would issue her a warning.

{¶4} Upon returning to his police cruiser with Ms. Thomas's driver's license, Officer Haddix radioed to dispatch to contact the Cuyahoga Falls Police Department and request a K-9 be made available. Officer Haddix then began the process of verifying Ms. Thomas's information through the mobile data terminal in his cruiser. He also radioed to the dispatcher to confirm the validity of Ms. Thomas's driving status and to check for any issues. Officer Haddix then began writing out the warning. The dispatcher promptly radioed back to inform Officer Haddix that Ms. Thomas's driver's license was valid, and that she had no warrants and no prior contacts with Stow Police.

{¶5} While Officer Haddix was still in the process of writing out the warning, Officer Barker, another officer with the Stow Police Department, arrived as backup and approached the passenger side of the cruiser. At that point, Officer Haddix stopped filling out the written warning and informed Officer Barker of the situation. He told Officer Barker that Ms. Thomas did not seem to be under the influence of drugs or alcohol, but appeared to be "very nervous." Officer Barker inquired as to whether Officer Haddix would conduct field sobriety tests. Officer Haddix indicated that he would not, but would just "see if the dog hits" when the K-9 unit arrived. Officers Haddix and Barker then engaged in conversation unrelated to the traffic stop. During this

conversation, Officer Haddix used the mobile data terminal and mentioned to Officer Barker that he was looking to see if a female officer was available.

{¶6} At that point, the K-9 unit arrived and that officer spoke with Officer Haddix. The officer from the K-9 unit then approached Ms. Thomas's vehicle and asked her to step out of her vehicle. Officer Haddix resumed writing the warning while Ms. Thomas spoke with the other officers. The K-9 unit officer informed Ms. Thomas that he was "[t]here because there was some other stuff going on" and asked Ms. Thomas if there was "any reason why [the dog] would alert on the vehicle?" Ms. Thomas admitted that she had psilocybin mushrooms in the vehicle under the front passenger seat.

{¶7} At her arraignment, Ms. Thomas entered a plea of not guilty. Thereafter, Ms. Thomas filed a motion to suppress evidence on several grounds. Relevant to this appeal, Ms. Thomas argued that Officer Haddix lacked reasonable grounds to detain her and her vehicle for the purpose of allowing a dog sniff after a stop for a minor traffic violation. The trial court held a hearing on the motion and took the matter under advisement. The trial court granted the motion and issued a written decision finding that the stop was unreasonably extended in order for the K-9 unit to arrive and, consequently, the trial court suppressed all statements Ms. Thomas made after the K-9 unit arrived and all evidence obtained during the subsequent search of her car.

{¶8} The State timely appealed the trial court's decision and presented one assignment of error for our review.

II.

**Assignment of Error**

**The trial court erred in granting [Ms. Thomas]'s motion to suppress evidence.**

{¶9}    The State contends, in its sole assignment of error, that the trial court erred when it found Officer Haddix impermissibly extended the time it took to write the traffic warning to permit the K-9 unit to perform a search, and also by finding that no additional facts existed to support the extension of the traffic stop.  Accordingly, the State contends the trial court erred when it granted Ms. Thomas's motion and suppressed evidence.

{¶10}   A motion to suppress evidence presents a mixed question of law and fact.  *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.  When the trial court considers a motion to suppress, it assumes the role of trier of fact and, therefore, it is in the "best position to resolve factual questions and evaluate the credibility of witnesses."  *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992).  Accordingly, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence."  *Id.*  Accepting such facts as true, this Court must "then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard."  *Id.*  This Court must, therefore, grant deference to the trial court's findings of fact while conducting a de novo review to determine whether the trial court applied the appropriate legal standard to those facts.  *State v. Booth*, 151 Ohio App.3d 635, 2003-Ohio-829, ¶ 12 (9th Dist.).

**Reasonable time to issue a warning**

{¶11}   The State contends that the trial court's findings of fact are not supported by competent, credible evidence.  First, the State argues the trial court erred when it "essentially found that [Officer] Haddix did not write quickly enough."  The State asserts Officer Haddix completed the warning within a reasonable time and that he did not "impermissibly stretch[] out the time it took to write the traffic warning," so that the K-9 unit could arrive to conduct a dog sniff.

{¶12} A traffic stop of a vehicle is an investigatory stop, which is a seizure for purposes of the Fourth Amendment, and such a stop may be lawfully based on an officer's reasonable suspicion "'that a motorist has committed, is committing, or is about to commit a crime.'" *State v. Phillips*, 9th Dist. Medina No. 16CA0018-M, 2017-Ohio-1312, ¶ 6, quoting *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 7. "It is well established that an officer may stop a vehicle to investigate a suspected violation of a traffic law." *Id.* In general, "[a]n investigative stop may last no longer than necessary to accomplish the initial goal of the stop." *State v. Rackow*, 9th Dist. Wayne No. 06CA0066, 2008-Ohio-507, ¶ 8. *Accord Rodriguez v. United States*, 575 U.S. 348, 354 (2015) ("Authority for the seizure [ ] ends when tasks tied to the traffic infraction are—or reasonably should have been—completed.").

{¶13} The measure of time for which an officer may delay a motorist stopped for a traffic violation is the period of time sufficient to issue a ticket or warning; this includes the time to run a check on the driver's license, determine whether the driver has any outstanding warrants, and confirm the vehicle's registration and driver's proof of insurance. *State v. Norvet*, 9th Dist. Medina No. 14CA0114-M, 2016-Ohio-3494, ¶ 6; *Rodriguez* at 355. "In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation." *Norvet* at ¶ 6.

{¶14} "If a traffic stop is justified, and does not last any longer than necessary to effectuate the original purpose of the stop, a law enforcement official may simultaneously conduct a K-9 sniff of the exterior of the vehicle without any additional reasonable, articulable suspicion of criminal activity." *State v. Reid*, 9th Dist. Lorain No. 12CA010265, 2013-Ohio-4274, ¶ 8. However, "[a]bsent reasonable suspicion, police extension of a traffic stop in order to conduct a

dog sniff violates the Constitution's shield against unreasonable seizures." *Rodriguez* at 350. "A seizure justified only by a police-observed traffic violation, * * * 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Rodriguez* at 350-51, quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).

{¶15} In the present matter, the trial court found that Officer Haddix had reasonable suspicion to stop Ms. Thomas for crossing over the marked lines on the road in violation of R.C. 4511.33. However, the trial court also found "that Officer Haddix was not diligent and timely in the exercise of his duties" while issuing Ms. Thomas a warning for the traffic violation, and "[b]ased upon the totality of the circumstances the [trial court found] that the Officer extended the traffic stop." In reaching this conclusion, the trial court considered the timeline and the actions of Officer Haddix during the traffic stop. The trial court took notice of the fact that, prior to the arrival of the K-9 Unit, Officer Haddix paused the task of completing the written warning in order to converse with another officer about matters unrelated to the stop and that he also took time to search for an available female officer, actions which were not required for the task of issuing a warning. The trial court observed that, after the K-9 Unit arrived, Officer Haddix then quickly completed the written warning. In the trial court's estimation, Officer Haddix could have completed the written warning approximately five minutes sooner, had he not been waiting on the K-9 Unit to arrive.

{¶16} On appeal, the State contends that the trial court failed to take into account Officer Haddix's testimony that he had written numerous tickets in his twelve years as a Stow police officer and that it takes him, on average, ten to fifteen minutes to complete each one. The State also asserts that the trial court improperly faulted Officer Haddix for scrolling on the computer in his cruiser, for talking to Officer Barker, and finding that, if he had not been waiting on the K-9

unit to arrive, he would have issued the warning approximately five minutes prior. Additionally, the State contends the trial court erroneously found that Officer "Haddix ought to have completed the warning before Cuyahoga Falls officers began speaking to [Ms.] Thomas because, 'Officer Haddix conceded that he knew the appropriate revised code section from memory[.]'"

{¶17} A review of the transcript shows Officer Haddix did testify that, in his experience, it usually takes ten to fifteen minutes to write out a warning. However, our review of the trial court's decision does not reflect, as the State contends, that the trial court disregarded this testimony. Rather, the trial court stated that it was able to consider "[t]he body [c]amera video [to] provide[] the court with an independent view of [Ms. Thomas] during the stop and conversation with the officer." Moreover, an officer's own approximation of the time it typically takes to complete a written warning is not a measure by which a court must determine the reasonableness of the delay in issuing a traffic warning. "If an officer *can complete* traffic-based inquiries expeditiously, then that is the amount of 'time reasonably required to complete [the stop's] mission.'" (Emphasis added.) *Rodriguez* at 357, quoting *Caballes*, 543 U.S. at 407.

{¶18} As stated above, the trial court did find that Officer Haddix delayed the process for reasons unrelated to the stop, including using his computer to search for a female officer and to speak with Officer Barker regarding matters unrelated to the stop. This Court's review of the record shows that, after telling Ms. Thomas he would "get [her] a warning and get [her] out of here" if her information checked out, Officer Haddix returned to his cruiser, confirmed all information regarding Ms. Thomas and her vehicle, and substantially completed the written warning. Once Officer Barker arrived, Officer Haddix stopped writing out the warning. Initially, Officer Haddix briefed Officer Barker on the circumstances of the traffic stop. After Officer Haddix explained to Officer Barker that he did not suspect Ms. Thomas to be under the influence

of drugs or alcohol, he stated that the intended to "just see if the dog hits on it when they get here." At that point, he and Officer Barker conversed about an unrelated traffic stop and the temperature in the cruiser. The body-camera footage also shows Officer Haddix searching his computer and explaining to Officer Barker that he was looking for a female officer. The span of time between Officer Haddix shifting his focus away from the task of issuing a warning and the police officer with the K-9 unit approaching his cruiser was just over three minutes. Officer Haddix did not resume writing the warning until approximately two minutes after the K-9 unit arrived and, when he did resume, it took him well under a minute to complete.

{¶19} The trial court's factual findings regarding the officer's actions are supported by a review of the body-camera video[1]. While the video substantiates the trial court's estimation that Officer Haddix could have issued the warning approximately five minutes sooner than he did, this timeline does not show that Officer Haddix could have issued the warning five minutes before the K-9 unit arrived. The video does, however, show a pause of more than three minutes during the stop, prior to the arrival of the K-9 unit, where the officer was not diligently conducting the investigation. When Officer Haddix resumed the task of issuing the written warning, it ultimately took him less than one minute to complete. Thus, the evidence supports the conclusion that the officer's delay extended the traffic stop by at least two minutes more than was necessary to issue

---

[1] The dissent expresses concern for the undertaking of "an exacting temporal review of the body camera footage where the officers' actions are evaluated on a minute by minute basis." However, as noted above, the trial court considered the body-camera footage to assess Officer Haddix's actions in order to determine whether he completed tasks related to the traffic stop within a reasonable length of time. Such consideration was essential to the trial court's evaluation of "'the duration of the stop in light of the totality of the circumstances [to determine] whether the officer diligently conducted the investigation.'" *Norvet*, 2016-Ohio-3494 at ¶ 6. Upon review of the trial court's factual determinations, this Court's role is to consider whether the factual findings are supported by competent, credible evidence and, if they are so supported, accept them as true. *Burnside*, 2003-Ohio-5372 at ¶ 8.

Ms. Thomas a warning, which afforded the additional time to allow the K-9 Unit to arrive. Additionally, Officer Haddix's own words implied that his intention was to wait for the K-9 Unit to arrive to see if the dog would hit on the car. This statement, taken together with the video evidence, runs contrary to the State's contention that Officer Haddix's only intent was to issue Ms. Thomas a warning and that he did so without impermissibly extending the stop.

{¶20} Regarding Officer Haddix's knowledge of the appropriate revised code section to write on the warning, the following exchange took place between Officer Haddix and counsel for Ms. Thomas during the suppression hearing:

Q: You probably know that code section by heart?

A: No, I don't. No.

Q: So this is something you had to look up?

A: Correct, yes. Yeah.

Q: Okay. And how long does it take you to look up a code section?

A: So we have inside my little book - - container book I open it up and there's a list of them. So you just go through the list and finds that violation and then the number's on there.

Q: So you have a cheat sheet in your bag?

A: Yes. Yes.

Q: So you're able to write these pretty quick then?

A: Yeah. Yeah.

The trial court's finding that "Officer Haddix conceded that he knew the appropriate revised code section from memory" is clearly contradicted by the officer's testimony. Still, Officer Haddix did acknowledge that he was able to locate the appropriate code section quickly, and a review of the evidence of record shows that he did locate the code section to expeditiously complete the warning

after the officer from the K-9 unit approached Ms. Thomas's vehicle. The trial court's errant factual finding does not alter the calculation of time attributable to the delay in the stop discussed above.

{¶21} Consequently, the State has failed to show that the trial court's findings of fact—relevant to its conclusion that the traffic stop of Ms. Thomas's vehicle was extended beyond a reasonable period of time—were not supported by competent, credible evidence. While the dissent notes that "the State is not required to demonstrate that the officers executed the stop with a maximum level of efficiency[,]" the officer is required to conduct the investigation with diligence, *Norvet*, 2016-Ohio-3494 at ¶ 6, and the stop 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation[,]" *Rodriguez* at 350-51, quoting *Caballes*, 543 U.S. at 407. Although the State discusses its view of the evidence in its merit brief and suggests that the facts support an opposite conclusion to that of the trial court, the State has not demonstrated factual support in the record for its contention that the traffic stop was completed within a reasonable period of time in light of the totality of the circumstances and consideration of the officer's diligence in conducting the investigation. *See Rodriguez* at 354; *Norvet* at ¶ 6.

**Reasonable Suspicion to prolong the stop**

{¶22} Next, the State argues a lack of competent credible evidence to support the trial court's findings of fact relative to its conclusion there were no additional facts obtained during the stop to warrant an extension of the stop and there was no reasonable suspicion to prolong the stop.

{¶23} As previously discussed, a traffic stop becomes unlawful if it is prolonged or extended for the purpose of conducting a dog sniff in the absence of reasonable suspicion of additional criminal activity. *Rodriguez*, 575 U.S. 349-350. Indeed, "[t]he lawfulness of the initial

stop will not support a fishing expedition for evidence of crime." *State v. Gonyou*, 108 Ohio App.3d 369, 372, (6th Dist.1995). However, "'[i]f during the limited scope and duration of the initial stop an officer encounters additional specific and articulable facts that give rise to a reasonable suspicion of criminal activity beyond that which prompted the stop, the officer may continue to detain the defendant to investigate those new concerns.'" *State v. Ross*, 9th Dist. Medina No. 15CA0021-M, 2016-Ohio-7082, ¶ 11; quoting *Norvet*, 2016-Ohio-3494 at ¶ 6. *Accord State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, ¶ 22 (A traffic stop may be lawfully prolonged if "reasonable suspicion under the totality of the circumstances justified the ongoing detention.").

{¶24} Reasonable suspicion involves more than a mere hunch as to the likelihood of criminal activity, but something less than what is required to demonstrate probable cause. *State v. Cunningham*, 9th Dist. Medina No. 14CA0032-M, 2015-Ohio-4306, ¶ 17. Reasonable suspicion requires "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion [upon an individual's freedom of movement]." *State v. Bobo*, 37 Ohio St.3d 177, 178 (1988), quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968). To determine whether reasonable articulable suspicion exists, a reviewing court must look to the totality of the circumstances. *Id.* at paragraph two of the syllabus.

{¶25} Following its determination that the traffic stop was extended beyond a reasonable period of time, the trial court further concluded that Officer Haddix did not have reasonable suspicion to prolong the traffic stop. The trial court found that there were no additional facts obtained during the stop to warrant an extension of the stop. Specifically, the trial court found that Ms. Thomas "did not appear excessively nervous in the body camera footage and everything checked out on her vehicle and her license relatively quickly." While acknowledging that Ms.

Thomas "did not disclose that she visited a suspected drug location prior to the traffic stop," the trial court found that Officer Haddix possessed limited knowledge regarding Ms. Thomas's stop at that apartment and Detective Heim did not testify concerning the circumstances of the suspected drug house or Ms. Thomas's presence there. "Further," the trial court stated, Ms. Thomas was "not required to disclose her every movement when being stopped and questioned." "Based upon the totality of the circumstances," the trial court concluded "that Officer Haddix did not have reasonable suspicion to prolong the traffic stop."

{¶26} The State takes issue with the trial court's findings that Ms. Thomas did not appear excessively nervous in the body-camera video. The State asserts that the trial court "disputed [Officer] Haddix's testimony that he saw [Ms.] Thomas's hands shake while holding a drink [and his] opinion that [Ms.] Thomas seemed to be excessively nervous."

{¶27} During his testimony Officer Haddix stated that Ms. Thomas appeared nervous and that her hand had been shaking while she was holding a drink. Officer Haddix can also be heard making this statement to Officer Barker on the body-camera video. Based on this Court's review of the evidence, it is unclear when Officer Haddix actually observed Ms. Thomas's hand shaking while she was holding a drink because, as the trial court stated in its decision, Ms. Thomas cannot be seen holding a drink on the body-camera video. In its decision, the trial court found that Ms. Thomas "had an articulate discussion" with Officer Haddix, and that her "hands were at most shaking only slightly while her phone was in her hand." The trial court found that Ms. Thomas's "voice quivered, but she did not appear excessively nervous any more than most persons would be when being pulled over by an officer." Although the State appears to suggest that the trial court should have viewed Officer Haddix's testimony regarding Ms. Thomas's nervous demeanor to

support a different conclusion, the State has not shown that the trial court's factual findings on this point are contrary to the competent, credible evidence of the record.

{¶28} The State also asserts that the trial court discounted Officer Haddix's knowledge that Ms. Thomas had been followed by Detective Heim from a location that the Summit County Drug Task Force was monitoring and that her "explanation of where she had been did not make sense[.]" The State appears to argue that the trial court should have given more weight to Officer Haddix's knowledge of Detective Heim's activities and Ms. Thomas's whereabouts prior to the stop.

{¶29} In its decision, the trial court noted that, when Officer Haddix asked Ms. Thomas where she was coming from "she stated she was coming from Summa and Joann Fabric[s], contrary to the information he had received from Det[ective] Heim." There is no evidence in the record to suggest that Ms. Thomas's statement was untrue, albeit incomplete in light of her omission of an additional stop at the Echo Valley apartment. Furthermore, during his testimony, Officer Haddix conceded that he was not watching and did not have knowledge of the residence that Detective Heim was monitoring. Officer Haddix also admitted during his testimony that he did not witness Ms. Thomas leave that residence, did not observe a drug transaction, and that his sole basis for the traffic stop was the marked lanes violation

{¶30} Despite Ms. Thomas's failure to mention an additional stop at the apartment Detective Heim was watching, the trial court determined that she was "not required to disclose her every movement when being stopped and questioned." While the State argues that Ms. Thomas's explanation of her course of travel prior to the stop did not make sense, and implies that her answer raises suspicion, the State has not demonstrated that the trial court failed to consider any relevant

evidence in its factual analysis, or that the trial court's factual findings on this point are contrary to the competent, credible evidence of the record.

{¶31} Additionally, the State notes that Officer Haddix commented to Officer Barker that Ms. Thomas pulled over quickly on the side of the road, while he would have preferred that she pull "completely out of traffic into a driveway." A review of the body-camera video reveals Officer Haddix did make such a statement to Officer Barker. However, Officer Haddix did not suggest that the manner in which Ms. Thomas pulled over in response to him signaling a traffic stop raised any suspicion regarding criminal activity. Accordingly, we conclude that the State's argument on this point lacks merit.

{¶32} The State argues that facts in the record support an opposite conclusion to that of the trial court: that "Officer Haddix did have additional facts that gave rise to a reasonable suspicion that [Ms.] Thomas was engaging in some other criminal conduct, such that a prolongation of her traffic stop was reasonable and permissible under the Fourth Amendment." However, the State has not pointed to evidence of any particular facts that raised Officer Haddix's suspicion as to any specific criminal conduct. Moreover, during his testimony, Officer Haddix confirmed that he had neither seen nor smelled any alcohol or narcotics and, prior to the K-9 unit arriving, "all [he had] is a marked lanes violation and someone who appears nervous[.]" Consequently, this Court concludes that the trial court did not err in its finding that no additional facts were obtained during the stop to warrant an extension of the stop and that there was no reasonable suspicion to prolong the stop for a K-9 sniff.

{¶33} Therefore, the State's assignment of error is overruled.

III.

**{¶34}** The State's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JULIE A. SCHAFER
FOR THE COURT

HENSAL, J.
CONCURS.

CARR, P. J.
DISSENTING.

{¶35} I respectfully dissent in regard to the lead opinion's conclusion that the traffic stop in this case was prolonged for an unreasonable amount of time.

{¶36} I would conclude that the actions of Officer Haddix and the length of the traffic stop were reasonable. It is well settled that a traffic stop may not last beyond the period of time that is reasonably necessary to fulfill the purpose of the stop. *See Rodriguez v. United States*, 575 U.S. 348, 354 (2015). After initially making contact with Thomas, Officer Haddix returned to his vehicle and promptly began preparing the citation. The trial court found that Officer Haddix unreasonably prolonged the stop for a period of approximately five minutes when he conversed with Officer Baker on an unrelated matter and searched the mobile data terminal for an available female officer. When Officer Baker arrived on the scene, Officer Haddix informed him about the circumstances of the stop, engaged in a brief discussion on an unrelated police matter, and then returned the conversation to the stop of Thomas's vehicle. Officer Haddix continued to engage the mobile data terminal while he spoke with Officer Baker. The K-9 unit arrived on the scene roughly 13 minutes after Officer Haddix initiated the traffic stop. Under the totality of the circumstances, I would conclude that the stop was not prolonged for an unreasonable amount of time.

{¶37} Furthermore, I would refrain from undertaking such an exacting temporal review of the body camera footage where the officers' actions are evaluated on a minute by minute basis. "The touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). The foremost question presented in this case is whether the officers unreasonably prolonged the traffic stop in order to make time for the K-9 unit to arrive. Under a reasonableness standard that takes into account the totality of the circumstances, the State is not required to

demonstrate that the officers executed the stop with a maximum level of efficiency. Accordingly, the fact that the officers could have been more efficient during a 2-3 minute period of time during an otherwise brief traffic stop does not render the stop invalid on account of its length.

APPEARANCES:

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellant.

BENJAMIN R. SORBER, Attorney at Law, for Appellee.